IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADAM CHRISTOPHER,

                     Plaintiff,

    v.

JIM SCHWOCHERT, LIZZIE TEGELS,
PATRICK SMETANA AND C.O. KNUDSON,

                     Defendants.

OPINION AND ORDER

18-cv-1073-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Adam Christopher, a prisoner at the Jackson Correctional Institution, is proceeding on claims that he has been denied access to books he needs for correspondence college courses, in violation of his rights under the First Amendment. Now before the court is plaintiff's motion for a preliminary injunction, dkt. #12, in which plaintiff requests that the court order defendants to permit him access to the books he needs for his college courses. Dkt. #12. Defendants have responded, contending that plaintiff is not entitled to immediate relief because his books were withheld pursuant to valid policies and that the balance of harms disfavors an injunction. For the reasons explained below, I conclude that plaintiff is entitled to preliminary injunctive relief as to his request that <u>Hard Times</u> be released to him. I will deny his request for relief in all other respects.

      Also before the court is plaintiff's motion for reconsideration of the screening order. Dkt. #25. He asks the court to reconsider the dismissal his First Amendment claims against Division of Adult Institutions Security Chief, Division of Adult Institutions Property

1

Committee and Jodi Dougherty, and his due process claims against defendant Warden Tegels and others. I will deny that motion because plaintiff's allegations are not sufficient to state a due process violation or any claims against the dismissed defendants.

From the evidence submitted by the parties in connection with their briefing on the motion for preliminary injunction, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

Plaintiff Adam Christopher is incarcerated at the Jackson Correctional Institution, where Lizzie Tegels is the warden, Patrick Smetana is the property sergeant and Knudson is a correctional officer. Plaintiff is also suing Jim Schwochert, the administrator of the Wisconsin Department of Corrections Division of Adult Institutions.

Plaintiff is enrolled in a four-year college correspondence program and has maintained a 4.0 grade point average. All of plaintiff's courses and course materials have been approved by Jackson Correctional's education director Randy Scott. On August 1, 2018, plaintiff enrolled in English 203: Major Themes in Literature. The "Norton Critical Edition" of Hard Times, by Charles Dickens, is required for the English course. Scott completed a form approving the course and course materials and forwarded it to the prison's property department.

On or about August 16, plaintiff's mother ordered Hard Times from Amazon's website. Amazon was the only website she could find that sold the edition of the book that

2

plaintiff needed. Although plaintiff's mother ordered the book on the Amazon website, the book was actually shipped from a third-party seller, called "Bearbooks." Amazon did not provide a "gift receipt" option for the transaction. Plaintiff's mother forwarded a copy of the electronic receipt from Amazon to defendant Smetana, the property sergeant, explaining that she did not know whether Amazon would include a receipt or packing slip with the books. Smetana responded to plaintiff's mother that the electronic receipt was insufficient and that if the books did not come with a receipt, they would not be allowed. Dkt. #13-1. When the book arrived without a receipt or packing slip, plaintiff was told that he could not have the book and that he would either have to send it back or destroy it.

Defendant Smetana was relying on prison rules that restrict the types of publications that inmates can receive through the mail. In particular, Wis. Admin. Code DOC § 309.05(2)(b) states that "[i]nmates may only receive publications directly from the publisher or other recognized commercial sources in their packages." The regulations do not define "recognized commercial sources" and there is no list of authorized vendors or criteria for authorization available to inmates. Under Division of Adult Institutions policy § 309.04.01(V)(K)(4), "[p]ublications shall arrive with . . . [a] receipt which lists each item and its value; or . . . [a] packing slip which lists each item." If there is no receipt or value listed on the packing slip, staff is to confirm the purchase price from the vendor. DAI Policy 309.20.03(I)(e)(5)(c).

Plaintiff wrote to several prison officials, including defendant Warden Tegels, about being denied the book and asking for information about how he could order the book he

needed. Between August and September 2018, plaintiff was denied additional books that he needed for his courses because the books arrived without receipts. Tegels responded to plaintiff that his books were properly denied under prison policy and that he should attempt to sort the issue out through the "chain of command" or by filing an inmate complaint. Plaintiff filed inmate complaints about the books, but the complaints were denied. Plaintiff has continued to write to numerous Department of Corrections officials for information about how to order the books he needs for his classes and has not received any explanation. Plaintiff wrote to Amazon, which responded that it did not routinely include receipts or packing slips with all packages.

In January 2019, plaintiff signed up for a new course: History 459: Southeast Asian Culture and Politics. Scott, the education director, completed a form notifying the property department that plaintiff should be allowed to receive the used book without a receipt. There are no policies that prohibit prisoners from ordering or receiving used books. However, when plaintiff's book arrived, defendant Smetana refused to release the textbook because it was used and had no receipt. Plaintiff eventually received this book, but the prison is still holding Hard Times in the property department.

The books plaintiff has ordered for his class are not large or hardcover books. Rather, they have been small paperbacks. In addition, plaintiff orders books for a course only after Scott approves the course and materials and plaintiff has paid for the course. His courses cost $600. All books shipped to the prison are inspected for contraband and suspicious signs of tampering. In some instances, the prison has delivered books to plaintiff when the book

arrived with a hand-written receipt.

OPINION

A.  Motion for Preliminary Injunctive Relief

Plaintiff seeks a court order (1) requiring defendants to release to him the copy of Hard Times, and (2) preliminarily enjoining defendants from denying him any publications needed for his correspondence courses based solely on the fact that the necessary publications are "used" or are not shipped with a receipt in the package. To win a preliminary injunction, a party must show that it (1) has some likelihood of success on the merits, (2) lacks any adequate remedy at law and (3) will suffer irreparable harm if a preliminary injunction is denied. American Civil Liberties Union of Illinois v. Alvarez, 679 F.3d 583, 589 (7th Cir. 2012). If the moving party makes this threshold showing, the court "weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." Id.

Because plaintiff is incarcerated, the scope of injunctive relief must comply with the Prison Litigation Reform Act, which requires that relief be (1) narrowly drawn, (2) extend no further than necessary to correct the violation of the federal right, and (3) are the least restrictive means necessary to correct the violation of the federal right. 18 U.S.C. § 3626(a)(1).

Plaintiff has shown a likelihood of success on the merits of his First Amendment claim

regarding the policy restricting his access to the copy of Hard Times that was shipped to the prison. The refusal to allow a prisoner access to a particular book "presents a substantial First Amendment issue." King v. Federal Bureau of Prisons, 415 F.3d 634, 638–39 (7th Cir. 2005). "Freedom of speech is not merely freedom to speak; it is also freedom to read." Id. (citing Stanley v. Georgia, 394 U.S. 557, 564 (1969); Lamont v. Postmaster General, 381 U.S. 301, 306–07(1965)). See also Miller v. Downey, 915 F.3d 460, 463 (7th Cir. 2019). Prisons may have "valid penological reasons for limiting prison inmates' access to certain" books, such as those discussing famous prison escapes or perhaps even books about making oneself stronger. Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012). But the prison must justify its interest in restricting access to books by showing that the restriction is "reasonably related to legitimate penological interests." Id. (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

In this instance, defendants refused to deliver Hard Times to plaintiff because it arrived without a receipt or packing slip stating the value of the item. In evaluating the constitutionality of this policy, the court must consider: (1) whether the restriction is rationally related to a legitimate andlegitimately penological interest; (2) whether the prison leaves open alternative means of exercising the restricted right; (3) what impact an accommodation of the asserted right will have on guards, other inmates and prison resources; and (4) whether there are obvious alternatives to the policy suggesting that the prison has exaggerated its concerns. Turner v. Safley, 482 U.S. 78, 89–91 (1987).

Defendants argue that the policy requiring that publications arrive from publishers or

6

recognized commercial sources, accompanied by a receipt or packing slip, is justified because materials from commercial sources are less likely to contain contraband and it would require additional resources to examine incoming publications from non-recognized sources for contraband. Defendants point out that this court upheld the "publishers only" rule in Pearson v. Berge, 2002 WL 32341701, at *1, 5 (W.D. Wis. 2002), a case in which the prison prohibited a prisoner from receiving pages that had been photocopied from a book.

Defendants have interpreted plaintiff's claim as a facial challenge to the constitutionality of the "publishers only" rule. But plaintiff's claim need not be read so broadly. Plaintiff is challenging the constitutionality of the rule only as it has been applied to him and his efforts to order books for his college course from commercial sources that arrive without a receipt. To resolve plaintiff's motion for preliminary injunctive relief, it is necessary only to address the rule as applied to plaintiff's specific situation. Miller, 915 F.3d at 464 ("The proper path was to answer the narrow and specific claim advanced by Miller—whether the jail's confiscation of his subscription to the Law Bulletin violated the First Amendment."); Hegwood v. City of Eau Claire, 676 F.3d 600, 603 (7th Cir. 2012) (explaining that principles of "judicial restraint" counsel in favor of resolving "as-applied challenges before facial ones in an effort to decide constitutional attacks on the narrowest possible grounds and to avoid reaching unnecessary constitutional issues"); Lindell v. Frank, 377 F.3d 655, 659–60 (7th Cir. 2004) (considering only whether the "publisher's only" rule was unconstitutional as applied to plaintiff). When plaintiff's claim is framed more narrowly, it is clear that he has shown a likelihood of success on the merits and that he is entitled to

injunctive relief, at least with respect to his claim regarding Hard Times.

Defendants' restrictive policies satisfy the first Turner factor: the security interest in screening for contraband and their economic interest in saving staff resources are both legitimate. There is a rational connection between these interests and a policy that lowers the overall number of mailed items that require screening.

But the remaining Turner factors, which relate to whether the "publishers only, receipt required" policy is a reasonable solution to the stated security problem, weigh against the defendants. First, plaintiff does not have an alternative means of exercising his rights. Plaintiff has submitted evidence showing that the only source for the specific edition of Hard Times he needs for his college course is Amazon's website, and that many of the books sold on Amazon's website are shipped through third-party sellers. Plaintiff has shown that Amazon and third-party sellers do not routinely include receipts or packaging slips with the books, and that plaintiff had no way to insure that a receipt was included with Hard Times. See, e.g., Lindell ("[I]n light of Lindell's lack of other access to the restricted materials and the less exaggerated responses available to the prison . . . , WSPF's ban as currently applied to all clippings and copies violated Lindell's First Amendment rights.").

Second, the defendants could accommodate plaintiff's rights without a large burden on staff. Defendants already screen mail and books that arrive, even if they arrive with receipts from publishers or commercial vendors. The potential security risk from plaintiff's particular book appears extremely low. The books are preapproved by the education director at the prison and, in the instance of Hard Times, plaintiff's mother emailed a copy of the

receipt to prison staff in advance, providing notice that the book would be arriving. Additionally, the prison has been holding the book for months.  Surely staff has reviewed the book by now for security concerns.  Ashker v. California Dep't of Corrections, 350 F.3d 917 (2003) (enjoining requirement that all vendors place special vendor label on package, where prison searched and inspected books anyway).

Third, there are obvious alternatives to defendants' restrictive policy.  Defendants have not explained why they cannot make exceptions for situations in which a prisoner seeks to order books from a commercial vendor for a college course that has been paid for and approved by the prison's education director and for which the prisoner has provided an email receipt.  Defendants submitted no evidence that any college course books have been used to smuggle in contraband or to pose other safety risks within the facility or that there are so many course books arriving from commercial vendors without receipts that it would impose a significant burden on the institution.  Courts must afford substantial deference to prison administrators on matters of institutional security, Overton v. Bazzetta, 539 U.S. 126, 132 (2003), but defendants still must present evidence "demonstrating a specific security concern that bears a nexus to the prohibited conduct." Riker v. Lemmon, 798 F.3d 546, 557 (7th Cir. 2015).  In this instance, defendants have not shown any security concern related to plaintiff's book.  Accordingly, I conclude that plaintiff has shown a likelihood of success on the merits of his First Amendment claim relating to Hard Times.

As for the remaining factors relevant to the preliminary injunction analysis, I conclude that plaintiff has shown that he lacks an adequate remedy at law and that he will suffer

9

irreparable harm without an injunction. With respect to the potential for money damages, I conclude that plaintiff could not obtain money damages in this case because defendants are protected by qualified immunity from plaintiff's claims for money damages. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). As defendants point out, there is no clearly established law stating that refusing to deliver plaintiff's books under circumstances similar to those at issue here was a First Amendment violation. Therefore, I conclude that although plaintiff is entitled to injunctive relief, he cannot recover damages.

Plaintiff also has shown that he will suffer irreparable harm. Plaintiff has maintained an impressive 4.0 grade point average while pursuing a college degree. If he is unable to obtain the book necessary for his English class, he will likely fail the class. Defendants' argument that failing one class should not be considered irreparable harm is unpersuasive.

Finally, the balance of harms weighs in favor of granting the injunction. The injunction does not affect the public. The harm to plaintiff if he does not receive the Hard Times book before the deadline to complete his class is significant, while the harm to defendants in delivering the book is slim to none. Therefore, I will order defendants to provide plaintiff the copy of Hard Times that they have been holding.

However, I will not issue an injunction requiring defendants to deliver any books that plaintiff orders that arrive without a receipt, because plaintiff has not shown that such a broad, prospective injunction is warranted. In particular, plaintiff has not shown that, like

10

Hard Times, books he orders for future classes will (1) be preapproved by the education director, (2) be available only from a vendor that does not provide packing slips or receipts and (3) include the option of providing an emailed receipt to the prison.

I also will not grant any injunctive relief regarding defendants' alleged prohibition on "used books." Defendants state that inmates are allowed to order used books, so long as the books meet the other property requirements, and plaintiff has identified no prison rule or regulation prohibiting used books. Although one of plaintiff's college course books was apparently rejected for being "used" and arriving without a receipt, it appears that the rejection of the book because it was used was error. Plaintiff is not currently being harmed by any prohibition against used books, so he has no need for immediate injunctive relief.

For all of these reasons, I will grant plaintiff's request for preliminary injunctive relief with respect to his claim for the Hard Times book only.

B. Motion for Reconsideration

Plaintiff has also filed a motion for reconsideration of the screening order. In that order, I permitted plaintiff to proceed with his First Amendment claim against defendants Smetana, Knudson, Schwochert and Tegels. I denied his request to proceed against defendants Jodi Dougherty, Melissa Roberts, Cathy Jess, the Division of Adult Institutions security director and the Property Committee, because plaintiff did not provide any specific details about how these individuals were personally responsible for creating or enforcing the policy requiring that property be accompanied by receipts or packing slips. Matthews v. City

of E. St. Louis, 675 F.3d 703, 708 (7th Cir. 2012) ("To be liable under § 1983, defendants must have been 'personally responsible' for the constitutional deprivation, which means that they 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'"). Plaintiff asks that the court reconsider its dismissal of these defendants because they were aware of the property policies and could have changed them.

I will deny this motion. Although the dismissed defendants may have known about the policy, plaintiff has not alleged facts suggesting that they knew the policy would be applied to plaintiff in a manner that would deprive him of his First Amendment rights. He also does not suggest that any of these defendants were personally involved in the decision to deny any of the specific books that he ordered or requested. Their involvement with the property rules was too far removed from plaintiff's specific claims.

Plaintiff also seeks reconsideration of the dismissal of his due process claim. He contends that defendant Tegels violated his right to procedural due process by failing to comply with certain state regulations, and that other defendants failed to provide him a specific form when he was denied books that gave him time to make a decision about what to do with the books. However, whether defendants complied with department policies is not determinative of whether defendants violated plaintiff's constitutional rights. Thompson v. City of Chicago, 472 F.3d 444, 454 (7th Cir. 2006) ("[T]his court has consistently held that 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of . . . departmental regulations and police practices.").

Plaintiff also argues that he does not know what defendants did with his books that

they refused to deliver. But it is not clear from his complaint or motion what books he is talking about. If he is referring to <u>Hard Times</u>, defendants have stated that they still have that book in the property department. If he is alleging that defendants have destroyed other books that he ordered, he must provide more information before I can evaluate whether he has a potential due process claim.

Finally, he says that he intends to bring state law tort claims, but that he is still researching his potential claims. If he wants to add additional claims to this case, he must file a motion for leave to amend his complaint. I will consider the motion under the standards of Rule 15 of the Federal Rules of Civil Procedure.

## C. <u>Conclusion</u>

As discussed above, I conclude that defendants are entitled to qualified immunity on plaintiff's First Amendment damages claims. Plaintiff's claims for damages will be dismissed. Additionally, I am granting plaintiff's request for preliminary injunctive relief, but only as to the narrow claim regarding <u>Hard Times.</u> After reviewing the parties' evidence and arguments and the relevant case law upholding prison restrictions on incoming publications generally, I am skeptical that plaintiff would be entitled to any broader injunctive relief in this case. In other words, there might not be much left to litigate after this order. However, I will wait until the parties file summary judgment motions to determine what disputes remain.

ORDER

IT IS ORDERED that

1. Plaintiff Adam Christopher's motion for a preliminary injunction, dkt. #12, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to plaintiff's request for immediate access to the book, <u>Hard Times</u>, by Charles Dickens, that defendants have been holding. Defendants are to release <u>Hard Times</u> to plaintiff within three days of the date of this order. Plaintiff shall be permitted to keep the book until he completes his course work for his English 203 class. The motion is DENIED in all other respects.

2. Plaintiff's motion for reconsideration, dkt. #25, is DENIED.

3. Plaintiff's claim for damages on his First Amendment claims are DISMISSED.

Entered this 23d day of August 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge