IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADAM CHRISTOPHER,

                                                OPINION AND ORDER

                Plaintiff,

                                                18-cv-1073-bbc

     v.

JIM SCHWOCHERT, LIZZIE TEGELS,
PATRICK SMETANA AND C.O. KNUDSON,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Adam Christopher, a prisoner at the Jackson Correctional Institution, is proceeding on claims that he has been denied access to books he needs for correspondence college courses, in violation of his rights under the First Amendment. Early in this case, I granted plaintiff's motion for a preliminary injunction in part, and ordered defendants to provide plaintiff access to the book, Hard Times, by Charles Dickens. Dkt. #34. I denied plaintiff's request for broader injunctive relief. I also concluded that defendants were entitled to qualified immunity on plaintiff's First Amendment damages claims, and I dismissed those claims. Id.

      Now before the court are several motions. Plaintiff has filed a motion for leave to amend his complaint to add additional claims and defendants. Dkt. #39. He has also filed a motion to compel discovery, dkt. #46, a motion to stay summary judgment, dkt. #49, and two motions to strike documents filed by defendants, dkt. ##56, 66. I will deny plaintiff's motion to amend his complaint, motion to compel, and motion to stay summary judgment,

1

for reasons discussed below. I will also deny plaintiff's motion to strike the declaration of Amie Chadwick, because, contrary to plaintiff's arguments, her declaration is not hearsay. Chadwick has sworn that her statements are based on her personal knowledge and experience as an employee and manager of the Adams State University bookstore during the relevant time period: from August 2016 to September 2019. I will grant plaintiff's motion to strike defendants' surreply brief. Defendants did not seek permission to file the surreply brief and, in any event, the surreply brief does not affect the outcome.

Defendants have filed a motion for summary judgment on plaintiff's remaining First Amendment claim for injunctive relief. Dkt. #42. I will grant the motion. Defendants have shown that the policy requiring books to arrive from a recognized commercial source and with a receipt is reasonably related to a legitimate penological interest.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed unless otherwise noted.

## UNDISPUTED FACTS

Plaintiff Adam Christopher is incarcerated at Jackson Correctional Institution, where Lizzie Tegels is the warden, Patrick Smetana is the property sergeant and Knudson is a correctional officer. Plaintiff is also suing Jim Schwochert, the administrator of the Wisconsin Department of Corrections Division of Adult Institutions.

Plaintiff is enrolled in a four-year college correspondence program through Adams State University. All of plaintiff's courses and course materials must be approved by Jackson

Correctional's education director, Randy Scott. On August 1, 2018, plaintiff enrolled in English 203: Major Themes in Literature. The "Norton Critical Edition" of Hard Times, by Charles Dickens, was required for the English course. Scott completed a form approving the course and course materials and forwarded it to the prison's property department.

Books required for Adams State University courses, including Hard Times, are available for purchase through the Adams State bookstore. If the bookstore does not have a book in stock, the bookstore will special order it. The bookstore often ships books to prisons, and it takes steps to accommodate the special shipping needs of prisoners, including shipping books with a receipt in the package. The bookstore can work directly with prisoners, a prison or a third party to insure that the prisoner can receive the books he or she needs.

In July and August 2018, Hard Times was available to purchase from the Adams State bookstore online, by telephone, by email, by mail or in person. (At the preliminary injunction stage, plaintiff alleged that the book was not available from the bookstore. It is now clear that plaintiff's allegation was not true.) Plaintiff's English 203 course sheet instructed him how to contact the bookstore by internet, email, telephone or U.S. mail to order books. (Plaintiff alleges that the bookstore's website was having problems in August 2018, but he cites no admissible evidence to support this proposed finding. Plaintiff also alleges that because of delays in approving courses at the prison, he often cannot order books until they are no longer stocked by the college bookstore. Again, plaintiff cites no evidence to support this proposed fact, and he does not say that the Adams State bookstore did not

3

have the books he needed in stock.

On or about August 16, plaintiff's mother ordered Hard Times from a third-party seller called "Bearbooks" on Amazon's website. Plaintiff's mother forwarded a copy of the electronic receipt from Amazon to defendant Smetana, the property sergeant, explaining that she did not know whether Amazon would include a receipt or packing slip with the books. Smetana responded to plaintiff's mother that the electronic receipt was insufficient and that if books came without a receipt, they would not be allowed. Dkt. #13-1. When Hard Times arrived without a receipt or packing slip, plaintiff was told that he could not have the book and that he would either have to send it back or destroy it.

Defendant Smetana was relying on prison rules that restrict the types of publications that inmates can receive through the mail. In particular, Wis. Admin. Code DOC § 309.05(2)(b) states that "[i]nmates may only receive publications directly from the publisher or other recognized commercial sources in their packages." The regulations do not define "recognized commercial sources," and there is no list of authorized vendors or criteria for authorization available to inmates. Under Division of Adult Institutions policy § 309.04.01(V)(K)(4), "[p]ublications shall arrive with . . . [a] receipt which lists each item and its value; or . . . [a] packing slip which lists each item." If there is no receipt or value listed on the packing slip, staff is to confirm the purchase price from the vendor. DAI Policy 309.20.03(I)(e)(5)(c).

Plaintiff wrote to several prison officials, including defendant Warden Tegels, about being denied the book and asking for information about how he could order the book he

4

needed. Between August and September 2018, plaintiff was denied additional books that he needed for his courses because the books arrived without receipts. Tegels responded to plaintiff that his books were properly denied under prison policy and that he should attempt to sort the issue out through the "chain of command" or by filing an inmate complaint. Plaintiff filed inmate complaints about the books, but the complaints were denied. Plaintiff wrote to Amazon, which responded that it did not routinely include receipts or packing slips with all packages.

Plaintiff filed this lawsuit in December 2018, challenging the policies that require books to be sent with receipts. He contended that the policies violated his First Amendment rights, because they prohibited him from receiving the books he needed for his correspondence course. I granted plaintiff leave to proceed on a First Amendment claim. In August 2019, I granted plaintiff's motion for a preliminary injunction with respect to his request for the book Hard Times, and I directed defendants to release the book to plaintiff from the prison's property department. In the same order, I dismissed plaintiff's claims for money damages, holding that defendants were entitled to qualified immunity with respect to any damages claims.

Plaintiff received his copy of Hard Times on August 27, 2019.

OPINION

A. Scope of the Case

At the outset, the parties dispute the scope of the claims remaining in the case.

5

Defendants insist that the court has dismissed all of plaintiff's claims except his narrow challenge to the DAI Policies that prohibited him from receiving Hard Times, after it arrived without a receipt. For his part, plaintiff contends that only his First Amendment claims for damages were dismissed, and that his broad claim for injunctive relief remains pending. Plaintiff also suggests that he has brought several other constitutional and state law claims, and he requests permission to amend his complaint to add additional claims. Dkt. #39.

Neither side has described the scope of the case accurately. For purposes of plaintiff's motion for preliminary injunctive relief, I addressed only plaintiff's claim regarding Hard Times. However, contrary to defendants' assertion, I did not limit plaintiff's case to an as-applied challenge regarding Hard Times. Defendants are correct that I expressed skepticism as to plaintiff's ability to succeed on a broader challenge to the "commercial source, receipt-required" rule, but I did not dismiss plaintiff's broader claim for injunctive relief. Dkt. #34 at 10-11.

As for plaintiff's suggestion that he has other constitutional or state law claims in this case, he is mistaken. In the screening order, I granted plaintiff leave to proceed on a single First Amendment claim only and I dismissed his other claims. Dkt. #18 at 7-8. As for plaintiff's request to expand this case to include additional constitutional and state law claims, I will deny that request. Plaintiff's wants to add claims about being denied Empire State, a novel, which arrived without a receipt, even though plaintiff asked the seller to provide one. However, plaintiff provides no information about whether the book was available from a source that could have provided a receipt. As discussed below, the DAI

6

policies are legitimate so long as prisoners are still able to order books. A mere statement from plaintiff that he was not allowed a book that arrived without a receipt is not enough to state a First Amendment claim.

Plaintiff also seeks to add claims against the DAI property committee and DAI security director for refusing to change the receipt requirement. However, because plaintiff has not shown that the receipt requirement is unconstitutional, adding claims against those parties would be futile. Finally, because I am dismissing all of plaintiff's federal claims, I will not permit him to amend his complaint to add state law claims. If he wants to pursue state law claims against any of the defendants, he may do so in state court.

### B. Merits of Plaintiff's First Amendment Claim

Prisoners retain their First Amendment right to receive information while incarcerated. Turner v. Safley, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). The refusal to allow a prisoner access to a particular book "presents a substantial First Amendment issue." King v. Federal Bureau of Prisons, 415 F.3d 634, 638–39 (7th Cir. 2005). "Freedom of speech is not merely freedom to speak; it is also freedom to read." Id. (citing Stanley v. Georgia, 394 U.S. 557, 564 (1969); Lamont v. Postmaster General, 381 U.S. 301, 306–07(1965)). See also Miller v. Downey, 915 F.3d 460, 463 (7th Cir. 2019). Prisons may have "valid penological reasons for limiting prison inmates' access to certain" books, such as those discussing famous prison escapes or perhaps even books about making oneself stronger.

7

Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012). But the prison must justify its interest in restricting access to books by showing that the restriction is "reasonably related to legitimate penological interests." Id. (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).

It is undisputed that the DAI Policies requiring books to arrive from a recognizable commercial source with a receipt or packing slip have the effect of restricting prisoners' access to books. The relevant question then is whether the restriction is a valid First Amendment restriction. In evaluating the constitutionality of the policy, the court must consider: (1) whether the restriction is rationally related to a legitimate penological interest; (2) whether the prison leaves open alternative means of exercising the restricted right; (3) what impact an accommodation of the asserted right will have on guards, other inmates and prison resources; and (4) whether there are obvious alternatives to the policy suggesting that the prison has exaggerated its concerns. Turner, 482 U.S. at 89–91. At the preliminary injunction stage, I concluded that defendants' policies did not satisfy the Turner test, at least as the policies were applied to plaintiff's order of the book, Hard Times. However, now that defendants have provided more facts regarding plaintiff's ability to order books, I conclude that plaintiff's First Amendment claim must fail.

Defendants' policies requiring books to be shipped from a recognized commercial source, with a receipt, satisfy the first Turner factor: the security interest in screening for contraband and the prison's economic interest in saving staff resources are both legitimate. There is a rational connection between these interests and a policy that lowers the overall

number of mailed items that require screening. Materials that arrive from publishers or recognized commercial sources are less likely to contain contraband, and additional prison resources would be required to examine incoming publications from non-recognized sources for contraband. The requirement that a receipt or invoice be included also makes sense. Many people have empty Amazon boxes that they could use to ship books containing contraband to prisoners. The receipt requirement provides verification that the book came from a commercial source. For these reasons, courts concluded that "publishers only" or "commercial source" rules are reasonably related to legitimate penological interests. This court has upheld the "publishers only" rule in previous cases. Lindell v. Frank, 377 F.3d 655, 658–59 (7th Cir. 2004) (collecting cases that had upheld "publishers only" or "commercial source" rules); Lindell v. O'Donnell, 211 F. App'x 472, 474 (7th Cir. 2006)("publishers only rules are reasonably related to a prison's interest in preventing contraband from being smuggled into the prison") (citation omitted); Golden v. Raemisch, No. 09-CV-442-BBC, 2010 WL 3123133, at *3 (W.D. Wis. Aug. 9, 2010) ("[R]educing contraband is a legitimate concern, [and b]ecause every item that comes into the prison presents a risk of contraband, it is rational to believe that a rule that limits the items coming into the prison would decrease the amount of contraband as well."); Pearson v. Berge, No. 01-C-0364-C, 2002 WL 32341701, at *5 (W.D. Wis. Aug. 27, 2002) ("[P]ublishers-only rule is reasonably related to the legitimate penological interests of security.").

As to the second Turner factor, defendants have shown that plaintiff has alternative means for obtaining books. Defendants have shown that plaintiff can order the books he

9

needs for his correspondence course directly from Adams State University bookstore, a source that would satisfy the "publishers only, receipt required" rule. Plaintiff has not submitted any evidence that the only source for the books he wants is through third-party sellers that do not provide receipts. Therefore, this case is distinguishable from other cases in which prison restrictions made it impossible for prisoners to obtain the materials they wanted, such as magazine clippings. See, e.g., Lindell ("[I]n light of Lindell's lack of other access to the restricted materials and the less exaggerated responses available to the prison . . . , WSPF's ban as currently applied to all clippings and copies violated Lindell's First Amendment rights."); Ashker v. California Dep't of Corrections, 350 F.3d 917, 924 (9th Cir. 2003) (striking down prison policy requiring special vendor labels because policy resulting in prisoner being prohibited from receiving any books at all).

The third Turner factor asks what impact an accommodation of the asserted right will have on guards, other inmates and prison resources. I conclude that this factor also weighs in defendants' favor. At the preliminary injunction stage, I found that the burden on staff in permitting plaintiff access to the single book, Hard Times, would not be great because defendants had been holding the book in the property department for months, they knew that plaintiff had ordered it for his class, the education director had approved it and plaintiff's mother had emailed the receipt to the prison. However, if prison staff was required to permit plaintiff and other prisoners to order books from noncommercial vendors generally, the burden on staff would be great. Although defendants already screen all mail and books that arrive at the prison, packages that arrive from non-commercial vendors

10

without a receipt would require additional screening, as they would be more likely to contain contraband.

The fourth factor asks whether there are obvious alternatives to defendants' "publishers-only, receipt required" policy. Plaintiff advocates for a rule permitting prisoners to receive books from any book vendor, whether or not a receipt is included. However, for the security reasons just discussed, this alternative is not feasible. Defendants could theoretically provide exceptions for situations in which a prisoner seeks to order books from a commercial vendor for a college course that has been paid for and approved by the prison's education director and for which the prisoner has provided an email receipt. However, requiring defendants to review emails for receipts or check with the education director for approval for every book that came in from a third-party seller or other non-commercial source would create an administrative burden. Such a burden is not justified in light of the facts that plaintiff can order his course books directly from the university's bookstore, and his failure to show that other books he wants are unavailable from commercial sources. Therefore, I conclude that plaintiff has failed to show that defendants violated his First Amendment rights.

C. Plaintiff's Motion to Compel

Finally, plaintiff filed a motion to compel defendants to provide additional information in response to his requests for production of documents. In particular, he seeks the following information: (1) all emails from Department of Corrections' staff or

contractors mentioning plaintiff since May 2016; (2) all emails from Department of Corrections' staff or contractors mentioning plaintiff's inmate complaints or petitions since May 2016; (3) all emails from Department of Corrections' staff or contractors mentioning the receipt policy; (4) all records relating to the DAI administrator's September 2016 memorandum regarding the receipt policy; (5) all absence records for unit staff from September 1, 2018; and (6) a copy of certain video footage.

Plaintiff does not explain how any of these documents would be helpful in determining the question at issue in this case: whether the DAI's "commercial source, receipt required" policy is constitutional under the standard in Turner, 482 U.S. at 89-91. I cannot conceive of any reason why these documents would be relevant or useful. Therefore, I will deny the motion.

ORDER

IT IS ORDERED that

1. Plaintiff Adam Christopher's motion for leave to supplement his complaint, dkt. #39, is DENIED.

2. The motion for summary judgment filed by defendants Knudson, Jim Schwochert, Patrick Smetana and Lizzie Tegels, dkt. #42, is GRANTED.

3. Plaintiff's motion to compel, dkt. #46, is DENIED.

4. Plaintiff's motion to stay defendants' summary judgment motion, dkt. #49, is DENIED.

5. Plaintiff's motion to strike the declaration of Amie Chadwick, dkt. #56, DENIED.

6. Plaintiff's motion to strike defendants' brief in surreply, dkt. #66, is GRANTED.

7. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 24th day of March 2020.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge