IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADAM CHRISTOPHER,

                       Plaintiff,

          v.

JIM SCHWOCHERT, LIZZIE TEGELS,
PATRICK SMETANA, C.O. KNUDSON
AND KEVIN CARR,

                     Defendants.

OPINION AND ORDER

18-cv-1073-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Pro se plaintiff Adam Christopher, a prisoner at the Jackson Correctional Institution, is proceeding on a First Amendment claim challenging Department of Corrections policies that require books ordered by prisoners to arrive from a recognized commercial source and with a receipt. Early in this case, I granted plaintiff's motion for a preliminary injunction in part, and ordered defendants to provide plaintiff access to the book, Hard Times, by Charles Dickens. Dkt. #34. I also concluded that defendants were entitled to qualified immunity on plaintiff's First Amendment damages claims, and I dismissed those claims. Id. I later granted defendants' motion for summary judgment as to the remainder of plaintiff's First Amendment claim for injunctive relief. Dkt. #69. However, I vacated that decision after concluding that plaintiff did not have adequate notice that the court was considering summary judgment as to his broad First Amendment challenge to defendant's "commercial source, receipt-required" rule that limits inmate access to books. Dkt #76. I directed

defendants to filed a new summary judgment motion that addressed several specific questions regarding plaintiff's claim.

Defendants' renewed summary judgment motion is now before the court. Dkt. #107. As explained below, I will grant the motion because defendants have shown that the policy requiring books to arrive from a recognized commercial source and with a receipt is reasonably related to a legitimate penological interest.

Also before the court are two motions for sanctions filed by plaintiff. Dkt. #132 and Dkt. #136. Plaintiff argues that defendants failed to respond to his discovery requests as required by the court's order partially granting plaintiff's motion to compel in March 2021. Dkt. #128. However, I have reviewed defendants' discovery responses and conclude that they are adequate. Dkt. #133. Plaintiff's objections are largely argumentative or relate to topics that are not relevant to the dispute at issue in this case. Therefore, I will deny the motions for sanctions.


OPINION

Plaintiff seeks to enjoin defendants from enforcing prison policies requiring books to arrive from a recognized commercial source and with a receipt. In particular, Wis. Admin. Code DOC § 309.05(2)(b) states that "[i]nmates may only receive publications directly from the publisher or other recognized commercial sources in their packages." Under Division of Adult Institutions policy § 309.04.01(V)(K)(4), "[p]ublications shall arrive with . . . [a] receipt which lists each item and its value; or . . . [a] packing slip which lists each item." If

there is no receipt or value listed on the packing slip, staff is to confirm the purchase price from the vendor.  DAI Policy 309.20.03(I)(e)(5)(c).  Plaintiff's original complaint in this case challenged these policies under the First Amendment, on the ground that the policies prohibited him from receiving books he needed for a college correspondence course.

The refusal to allow a prisoner access to particular books "presents a substantial First Amendment issue."  King v. Federal Bureau of Prisons, 415 F.3d 634, 638–39 (7th Cir. 2005).  The state must justify its interest in restricting access to books by showing that the restriction is "reasonably related to legitimate penological interests."  Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012) (citing Lindell v. Frank, 377 F.3d 655, 657 (7th Cir. 2004)).  In evaluating the constitutionality of a policy restricting access to books, the court must consider: (1) whether the restriction is rationally related to a legitimate penological interest; (2) whether the prison leaves open alternative means of exercising the restricted right; (3) what impact an accommodation of the asserted right will have on guards, other inmates and prison resources; and (4) whether there are obvious alternatives to the policy suggesting that the prison has exaggerated its concerns. Turner v. Safley, 482 U.S. 78, 89-91 (1987).

In the previous summary judgment decision, I concluded that defendants' policies requiring books to be shipped from a recognized commercial source, with a receipt, satisfy the first Turner factor:  minimizing the chance of contraband entering the prison through the mail and preserving staff resources are both legitimate policies.  After reviewing plaintiff's additional evidence, I reach the same conclusion.  There is a rational connection between defendants' security and administrative interests and a policy that lowers the overall number

3

of items being shipped from non-commercial vendors.  As plaintiff concedes, materials that arrive from publishers or recognized commercial sources are less likely to contain contraband.  Plt.'s Resp., Dkt. #140, ¶ 33.  In addition, defendants have submitted evidence showing that prisoners at Jackson Correctional in particular have attempted to send or receive contraband using the mail system.  Additional prison resources would be required to examine incoming publications from non-recognized sources.

The requirement that a receipt or invoice be included also makes sense.  Many people have empty boxes from Amazon or other common vendors that they could use to ship books containing contraband to prisoners.  The receipt requirement provides verification that the book came from a commercial source, and specifically, from the source indicated on the outside of the package.  Dkt. #113, ¶ 7 (Schwochert Dec.).  The receipt requirement also enables the prison to account for the value of inmate property, and to minimize the amount of time necessary for staff to confirm the value of inmate property.  Id.

For these reasons, several courts have concluded that "publishers only" or "commercial source" rules are reasonably related to legitimate penological interests.  This court has upheld the "publishers only" rule in previous cases.  Lindell v. Frank, 377 F.3d 655, 658–59 (7th Cir. 2004) (collecting cases that had upheld "publishers only" or "commercial source" rules); Lindell v. O'Donnell, 211 F. App'x 472, 474 (7th Cir. 2006) ("publishers only rules are reasonably related to a prison's interest in preventing contraband from being smuggled into the prison") (citation omitted); Golden v. Raemisch, No. 09-CV-442-BBC, 2010 WL 3123133, at *3 (W.D. Wis. Aug. 9, 2010) ("[R]educing

contraband is a legitimate concern, [and b]ecause every item that comes into the prison presents a risk of contraband, it is rational to believe that a rule that limits the items coming into the prison would decrease the amount of contraband as well."); Pearson v. Berge, No. 01-C-0364-C, 2002 WL 32341701, at *5 (W.D. Wis. Aug. 27, 2002) ("[P]ublishers-only rule is reasonably related to the legitimate penological interests of security.").

The second Turner factor is whether plaintiff has alternative means for obtaining books. This factor also favors defendants. In support of their first motion for summary judgment, defendants submitted evidence showing that plaintiff could order the books he needed for his correspondence courses directly from the college's bookstore, a source that would satisfy the "publishers only, receipt required" rule. Plaintiff argued that the bookstore was not always reliable, but he failed to submit any admissible evidence showing that he had attempted to order a book from the college bookstore that was out of stock, or that, because of defendants' rules, he was unable to obtain a book he needed for a course. However, in support of his motion for reconsideration, plaintiff argued that he had evidence showing that he could not obtain all of the books he needs for his college courses and for his own leisure reading from commercial sources that provide receipts.

Now plaintiff has had the opportunity to submit additional evidence, but it does not undermine my previous decision. Plaintiff's evidence shows that he receives two to three books each month, on average, totaling more than 100 books in the past four years. He has identified eight books that arrived for him without a receipt in the past four years. Dkt. #80-4. Of those eight books, he eventually received six of them, after either finding the

receipt, receiving special permission from the prison's education director to keep the book, or ordering the book from a different source. The two books that he did not receive because they arrived without a receipt are Empire State and Ancient Greek Dictionary. Plaintiff admits that he obtained another Greek dictionary from an alternative source. As for Empire State, plaintiff has not shown that the only source for that book is through a vendor that does not provide receipts. Thus, he has failed to refute defendants' evidence that he has alternative means of exercising his First Amendment rights.

The third Turner factor asks what impact an accommodation of the asserted right will have on guards, other inmates and prison resources. Plaintiff argues that requiring prison staff to permit plaintiff and other prisoners to receive books without receipts would not impose a significant burden on staff. Plaintiff points out that prison staff already screens all mail and books that arrive at the prison, including books from commercial vendors. He further argues that it would impose little additional burden on prison staff for them to accept receipts emailed from a friend or family member who purchases a book for an inmate.

In response, defendants argue that additional screening would be required for packages that arrived without receipts, because such packages would be more likely to contain contraband. Defendants also say that permitting email receipts would impose an additional burden, because staff would be required to review emails from various sources to track down receipts.

Defendants' arguments are persuasive. Although the additional burden on prison staff proposed by plaintiff might not be great, it would not be negligible. Wisconsin's prison

6

system is already understaffed, and imposing additional screening tasks on prison staff is not justified in light of plaintiff's unrefuted ability to obtain books from commercial sources that provide receipts.

Finally, the fourth <u>Turner</u> factor asks whether there are obvious alternatives to defendants' "publishers-only, receipt required" policy. Plaintiff advocates for a rule permitting prisoners to receive books from any book vendor, whether or not a receipt is included. He also argues that prison staff should accept emailed receipts. However, for the security and administrative reasons discussed above, these alternatives are not feasible or justified by the evidence. Requiring defendants to review emails for receipts or take additional steps to verify that every book is from an authorized source would create an administrative burden. Such a burden is not justified in light of the facts showing that plaintiff can obtain the books he wants from commercial sources that provide receipts. Therefore, I conclude that plaintiff has failed to show that defendants violated his First Amendment rights.

ORDER

IT IS ORDERED that

1. Plaintiff Adam Christopher's motions for sanctions, dkt. #132 and dkt. #136, are DENIED.

2. The motion for summary judgment filed by defendants Jim Schwochert, Lizzie Tegels, Patrick Smetana, C.O. Knudson and Kevin Carr, dkt. #107, is GRANTED.

3.  The clerk of court is directed to enter judgment for defendants and close this case.


Entered this 20th day of September, 2021.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge
